IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIANE A. WILSON and HARRY J. WILSON, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-511-SLR-SRF |
| WELLS FARGO ADVISORS, LLC, WELLS FARGO SECURITIES, LLC, WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, and WELLS FARGO DELAWARE TRUST COMPANY, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Presently before the court are the Motions to Dismiss brought by Wells Fargo Advisors, LLC, Wells Fargo Securities, LLC, and Wells Fargo Advisors Financial Network, LLC (collectively, the "Non-Trust Defendants") and Wells Fargo Delaware Trust Company (the "Trust Defendant;" together with the Non-Trust Defendants, the "Defendants"), seeking dismissal of the complaint on the basis that it fails to state a claim and is preempted by federal law, namely, the Securities Litigation and Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. 77p(b), 78bb(f)(1).

Plaintiffs Diane A. Wilson and Harry J. Wilson ("Plaintiffs") filed this class action lawsuit in the Delaware Court of Chancery asserting claims under Delaware law against all Defendants for breach of fiduciary duties and breach of a settlement agreement arising from the collapse of the market for investments known as auction rate securities ("ARS") that Defendants allegedly

underwrote, marketed and sold. Defendants removed the action to this court and filed the pending motions to dismiss.[1] For the reasons set forth below, I recommend that the court grant the motions to dismiss, without prejudice.

## II. BACKGROUND

On May 5, 2011, Plaintiffs filed a class action complaint in the Court of Chancery for the State of Delaware against Defendants, alleging causes of action for breach of fiduciary duty and breach of a settlement agreement. (D.I. 1, Ex. A) On June 10, 2011, Defendants removed the action to this Court. (D.I. 1) The parties jointly stipulated that the time for Defendants to respond to the Complaint would be July 1, 2011. (D.I. 3) Defendants filed their respective motions to dismiss on July 1, 2011. (D.I. 4, 6) The motions to dismiss are presently before the Court.

Plaintiffs are residents of Florida and are settlors and beneficiaries of the Diane A. Wilson Irrevocable Delaware Trust I (the "Wilson Trust"), a Delaware trust created through Wachovia Bank and Delaware Trust Company ("Wachovia Trust"). (D.I. 1, Ex. A at ¶¶ 7, 11-12, 75-76) Plaintiffs brought this action on behalf of themselves and all others similarly situated, as representatives of a proposed class of "[a]ll trusts and trust beneficiaries who had trusts at Wachovia Trust and Wells Fargo that held ARS which were not bought back after Wachovia's settlement with the SEC." (*Id.* at ¶ 95)

The Trust Defendant is a successor to Wachovia Bank and Delaware Trust Company ("Wachovia Trust") and is a Delaware corporation. (D.I. 1 at ¶ 13) The Non-Trust Defendants are successors to Wachovia Securities, LLC and Wachovia Capital Markets, LLC (together,

---

[1]The Non-Trust Defendants join in the Trust Defendants' motion to dismiss based on federal preemption under SLUSA. The Trust and Non-Trust Defendants have asserted separate but similar arguments in support of the motion to dismiss for failure to state a claim.

2

"Wachovia"), and are Delaware limited liability companies.[2] (*Id.* at ¶¶ 14-16) The Non-Trust Defendants are broker-dealers registered with the Securities and Exchange Commission (the "SEC") pursuant to Section 15(b) of the Exchange Act and are registered investment advisers pursuant to Section 203(c) of the Investment Advisers Act of 1940. (*Id.*) The Non-Trust Defendants offer a variety of financial, advisory, brokerage, asset management and other services to millions of retail customers nationwide. (*Id.*)

Wachovia Trust Company, Inc. operated as a trust company that offered trust administration, investment management, philanthropic advisory, and estate settlement services. (*Id.* at ¶ 17) The company was bought by Wells Fargo. (*Id.*) A.G. Edwards was a division of Wachovia which was consolidated into Wachovia's broker-dealer operations on January 1, 2008. (*Id.* at ¶ 18)

Wachovia Trust was named the trustee of the Wilson Trust after its creation on June 22, 2005. (*Id.* at ¶¶ 75, 77) As trustee, Wachovia Trust had sole discretion in purchasing assets with the Wilson Trust property. (*Id.* at ¶ 78) In August 2005, Wachovia Trust purchased auction rate securities ("ARS") to be held by the Wilson Trust. (*Id.* at ¶ 79)

ARS are "bonds issued by municipalities, student loan entities, and corporations, or preferred stock issued by closed-end mutual funds, with interest rates or dividend yields that are periodically reset through auctions." (*Id.* at ¶ 19) The issuer of each ARS selects broker-dealers to underwrite the offering and manage the auction process. (*Id.* at ¶ 20) Before an auction, each participating broker-dealer accepts orders from its customers and submits the orders to the auction agent. (*Id.* at

---

[2]Specifically, Wells Fargo Advisors, LLC is the successor to Wachovia Securities, LLC, and defendant Wells Fargo Securities, LLC is the successor to Wachovia Capital Markets, LLC. (D.I. 1, Ex. 1 at ¶¶ 14, 15) Plaintiffs allege in the complaint that Wells Fargo Advisors Financial Network, LLC is another successor to Wachovia Securities, LLC and Wachovia Capital Markets, LLC. (*Id.* at ¶ 16)

¶ 21) Customers bid the lowest interest rate or dividend they are willing to accept, and the auction clears at the lowest rate bid that is sufficient to cover all of the securities for sale. (*Id.*) If there are not enough bids to cover the securities for sale, the auction fails and the issuer pays a maximum "penalty" rate. (*Id.* at ¶¶ 21-22) Prior to February 2008, if there were not enough bids placed by customers to purchase all of the securities sold in an auction, the broker-dealer purchased the remaining ARS into its own inventory to prevent a failed auction, called a "support bid." (*Id.* at ¶ 23)

Wachovia underwrote and acted as sole or lead broker-dealer on a number of ARS offerings, and acted as contractual broker-dealer on other ARS auctions. (*Id.* at ¶ 24) Wachovia followed the industry practice of using its own capital to place support bids to prevent a failed auction. (*Id.* at ¶ 25) Customers who purchased ARS through accounts at A.G. Edwards were given a secondary market between auctions by Wachovia, which allowed customers to reduce their ARS holdings to cash by selling their ARS directly to A.G. Edwards' inventory without waiting to place an order on the next auction date. (*Id.* at ¶ 26) Wachovia did not place any limitations on this par daily liquidity service. (*Id.*)

Wachovia taught its financial advisors to market ARS to customers as cash alternatives or money market instruments. (*Id.* at ¶¶ 40-44) A.G. Edwards and Wachovia did not disclose the risks associated with ARS to financial advisors or customers and downplayed disclosures regarding auction failures, support bids and the discretionary nature of par daily liquidity. (*Id.* at ¶¶ 32-37)

In December 2007 and January 2008, customer demand for ARS decreased due to investor concerns about the creditworthiness of certain ARS insurers, higher than normal ARS inventory at A.G. Edwards, interest rate trends in the ARS market and the existence of auction failures. (*Id.* at

4

¶ 45) Wachovia downplayed the risk of auction failures to its customers by stating that ARS had high, above market penalty rates if an auction failed to compensate the holder for the lack of liquidity and to create incentives for the issuer to provide liquidity by redeeming the ARS. (*Id.* at ¶ 68) Wachovia did not disclose that certain ARS had low, below market penalty rates. (*Id.*)

On February 13, 2008, Wachovia's senior management stopped A.G. Edwards' par daily liquidity service, and the next day, stopped placing support bids in ARS auctions for which Wachovia acted as lead manager or sole broker-dealer. (*Id.* at ¶ 74) The ARS market collapsed shortly thereafter, and Wachovia's customers were unable to liquidate about $14 billion in ARS holdings. (*Id.*)

The SEC filed a complaint against Wachovia Securities, LLC in the United States District Court for the Northern District of Illinois, alleging violations of Section 15(c) of the Securities Exchange Act of 1934 for its ARS practices. (*Id.* at ¶ 76) Wachovia Securities, LLC reached a $7 billion settlement with customers who invested in ARS before the market for those securities collapsed. (*Id.* at ¶ 77) Wachovia Capital Markets, LLC voluntarily agreed to provide identical relief to its ARS customers. (*Id.* at ¶ 78) The settlement provided that Wachovia would buy back ARS from accounts maintained by Wachovia on or before February 13, 2008, and would pay customers who sold their ARS below par value between February 13, 2008 and November 10, 2008 the difference between par value and the sale price of the ARS, plus reasonable interest.[3] (*Id.* at ¶ 79) Wachovia further agreed to compensate customers who took out loans from Wachovia after

---

[3] The facts herein are taken from Plaintiffs' complaint. However, the Consent Judgment that Wachovia Securities, LLC executed with the SEC indicates that it was to "make an offer to buy back Eligible ARS at par . . ." from its "Individual Eligible Customers" who were defined to include "all customers who purchased ARS from Wachovia into accounts maintained at Wachovia on or before February 13, 2008." (D.I. 5, Ex. B)

February 13, 2008 because of liquidity concerns and offered to lend its customers the full par value of their ARS, pending the contemplated buyback, with interest rates set so that customers would have no negative carry on their loans. (*Id.*)

The Wilson Trust continued to hold the ARS purchased by Wachovia Trust as of August 2010. (*Id.* at ¶ 80) Wachovia Trust listed the ARS at full par value and market value on the Wilson Trust account statements. (*Id.* at ¶ 81) Wachovia Trust never informed Plaintiffs that the Wilson Trust held ARS, that Wachovia had entered into a settlement which included the buyback of all ARS by June 30, 2009, or that the ARS held by the Wilson Trust had lost all or most of their market value. (*Id.* at ¶¶ 82-85)

In September 2010, the Wilson Trust assets were transferred to an account maintained by Wells Fargo (the "Wilson Account"). (*Id.* at ¶ 86) The account manager for the Wilson Account informed Plaintiffs for the first time that the ARS had little to no value. (*Id.* at ¶ 87) Wachovia, Wachovia Trust, and Wells Fargo did not buy back the ARS from the Wilson Trust after the collapse of the ARS market, and the ARS continued to be listed at full par and market value on Wilson Trust statements. (*Id.* at ¶¶ 89-90) Moreover, Wachovia, Wachovia Trust and Wells Fargo continued to charge management fees based on the ARS's full par and market value despite a lack of any liquidity or market value. (*Id.* at ¶ 91) Plaintiffs only received notice of the ARS's true market value after the Wilson Trust assets were transferred to the Wilson Account at Wells Fargo. (*Id.* at ¶ 92)

### III. LEGAL STANDARD

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set

forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 663. The court "need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV. DISCUSSION

### A. SLUSA Preemption

#### 1. Legal standard

Removal of a civil action that was filed in state court is generally proper if the federal court would have had original jurisdiction to address the matter. 28 U.S.C. § 1441; *see also Rowinski v. Salomon Smith Barney, Inc.*, 2003 WL 22740976, at *2 (M.D. Pa. Nov. 20, 2003). Defendants

indicate that this Court has jurisdiction under SLUSA as well as 28 U.S.C. §§ 1331 and 1441.[4] (D.I. 1) The Court must therefore determine whether SLUSA precludes[5] Plaintiffs' state law claims. *See Rowinski*, 2003 WL 22740976, at *2.

SLUSA provides that:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>    (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>    (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). Therefore, SLUSA "mandates removal and then dismissal of any: (1) covered class action; (2) based on state law; (3) alleging a misrepresentation or omission of a material fact or act of deception; (4) in connection with the purchase or sale of a covered security." *Alessi v. Beracha*, 244 F. Supp. 2d 354, 357 (D. Del. 2003).

The parties' dispute centers only on whether the complaint alleges a misrepresentation or omission of a material fact "in connection with" the purchase or sale of a covered security. Material

---

[4] Alternatively, Defendants indicate that removal is based upon the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), as codified at 28 U.S.C. §§ 1332, 1441, and 1453. (D.I. 1 at ¶¶ 18-28) This alternative basis for removal is not addressed in the briefing on the motion to dismiss. As such, the Court will not address removal jurisdiction under CAFA at this juncture.

[5] In *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006), the Supreme Court held that SLUSA "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class action device in federal as well as state court." "In other words, SLUSA does not provide a federal rule of decision in lieu of a state one, but instead provides a federal defense precluding certain state law actions from going forward." *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009). As a result, the defense is more properly characterized as a federal preclusion defense, and does not fall under the complete preemption exception to the well-pleaded complaint rule of 28 U.S.C. § 1331. *Id.* at 1219-20; *Kircher*, 547 U.S. at 636 n.1.

misrepresentations and omissions are one element of the SLUSA preclusion analysis. *See Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299-300 (3d Cir. 2005). The other element requires that such material misrepresentations occur "in connection with" the purchase or sale of a covered security. *Id.* at 300-01. SLUSA does not define the language "in connection with the purchase or sale of a security." *Spencer v. Wachovia Bank, N.A.*, 2006 WL 3408043, at *6 (S.D. Fla. May 10, 2006).

In construing the statute, the Supreme Court has cautioned against a narrow interpretation, declaring that the "in connection with" language must be given the same broad construction as the language of Section 10(b) and Rule 10b-5 of the Exchange Act. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). Interpreting SLUSA broadly, the Supreme Court has concluded that the identity of the plaintiff is not dispositive in determining whether state law causes of action are precluded by SLUSA. *Dabit*, 547 U.S. at 85. Therefore, any distinction between holders of securities and purchasers or sellers of securities is irrelevant. *Id.* at 88-89. Rather, "the requisite connection is established where a 'fraudulent scheme' and a securities transaction 'coincide.'" *Rowinski*, 298 F.3d at 300 (quoting *SEC v. Zandford*, 535 U.S. 813, 825 (2002) (conducting an analysis under § 10(b) and Rule 10b-5)). When the gravamen of the complaint involves a misrepresentation or omission, and when that conduct coincides with a transaction involving a covered security, SLUSA mandates dismissal. *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 567-68 (E.D. Mo. 2006).

The nature of the relief requested by the plaintiff is also relevant in "connecting" the allegations of the complaint to the purchase or sale of securities. *See Rowinski*, 398 F.3d at 301.

Where, as here,[6] a plaintiff's theory of damages includes the recovery of excess trust management fees or investment losses, there is no doubt that such charges are incurred in connection with the purchase or sale of securities. *See id.*

Although courts must "be wary of efforts to circumvent SLUSA through artful pleading" when conducting the SLUSA preclusion analysis, the converse is also true. *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 567-68 (E.D. Mo. 2006). The parties must not "lose sight of the general presum[ption] that Congress does not cavalierly pre-empt state-law causes of action." *Dabit*, 547 U.S. at 87 (internal citations and quotations omitted). Courts have cautioned that a broad interpretation of SLUSA "does not transform every breach of fiduciary duty into a federal securities violation," and a "defendant may not recast plaintiff's Complaint as a securities fraud class action so as to have it preempted by SLUSA." *Grund v. Del. Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 241 (S.D.N.Y. 2011) (quoting *SEC v. Zandford*, 535 U.S. 813, 825 n.4 (2002)); *Paru v. Mutual of Am. Life Ins. Co.*, 2006 WL 1292828, at *3 (S.D.N.Y. May 11, 2006). A rule of thumb is that the claims must have "more than some tangential relation to the securities transaction" before they will be precluded under SLUSA. *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130-31 (9th Cir. 2003), *abrogated on other grounds by Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208 (9th Cir. 2009).

---

[6]By way of example, Count I of the complaint for breach of fiduciary duty states that "Wachovia Trust / Wells Fargo continued to collect management fees based on the non-existent market value of ARS." (D.I. 1, Ex. 1 at ¶ 105) The complaint then requests relief in the form of compensatory, consequential, incidental, and punitive damages as compensation for Defendants' breaches of fiduciary duty. (*Id.* at 31-32)

### 2. Parties' contentions

In support of their preemption argument, Defendants contend that the allegations in the complaint illustrate that misrepresentations were made in connection with the purchase or sale of the ARS, specifically citing: (1) allegations that the Non-Trust Defendants misled Plaintiffs regarding the increasing risks associated with ARS, the liquidity and safety of ARS and the risk of auction failures; (2) allegations that the Trust Defendant failed to notify or inform Plaintiffs that the Wilson Trust held ARS with no market value; (3) allegations that the Trust Defendants failed to inform Plaintiffs that the Non-Trust Defendants had entered into agreements offering to buy back certain ARS; and (4) allegations that the Trust Defendants represented that the Wilson Trust ARS retained full value and liquidity. (D.I. 7 at 10) Although the complaint is framed as a class action for breach of fiduciary duty and breach of a settlement agreement, Defendants contend that its overarching theme is based on misrepresentations and omissions of material facts and deceptive conduct in connection with the purchase and sale of securities. (*Id.* at 14) Defendants note that enforcement of SLUSA does not leave Plaintiffs without a remedy because SLUSA preempts only state law claims brought as a class action or brought by more than fifty people. (*Id.* at 15)

In response, Plaintiffs contend that the allegations set forth in the complaint should not be preempted by SLUSA because they have no connection to the purchase or sale of a covered security.[7] (D.I. 10 at 4) Specifically, Plaintiffs contend that Defendants' actions occurred after the ARS were sold, and any allegations concerning the purchase of securities merely serve as background to the

---

[7]Plaintiffs concede in their answering brief that ¶ 97(c) should be struck from the complaint: "Plaintiffs concede a drafting error and agree that ¶ 97(c) should be struck from the Complaint. That sub-paragraph is inconsistent with the allegations in Counts I-III which relate to failing to buy-back the ARS and continuing to charge fees for non-existent values on the securities." (D.I. 10 at 5 n.1)

complaint. (*Id.* at 4-5) Moreover, Plaintiffs contend that Defendants' collection of management fees on non-existent values and their failure to buy back the ARS pursuant to the SEC agreement, properly form the basis for state law causes of action for breach of fiduciary duty and breach of contract. (*Id.* at 4)

### 3. Analysis

I recommend that Defendants' motion to dismiss be granted as it pertains to the issue of SLUSA preclusion. Although the claims are framed as causes of action for breach of fiduciary duty and breach of a settlement agreement, the gravamen of the complaint involves misrepresentations and omissions of material fact in connection with securities transactions. Specifically, the complaint alleges in relevant part that Defendants:

> "misrepresented to . . . customers that ARS were safe, highly liquid investments comparable to cash or money market instruments. As a result, numerous customers purchased ARS using funds that they needed to remain available on a short-term basis." (D.I. 1, Ex. A at ¶ 1)

> "did not . . . adequately disclose that: (1) auctions could fail, rendering customers' ARS holdings illiquid, (2) an auction's success may depend on a broker-dealer . . . placing support bids in an auction, and (3) the par daily liquidity service . . . could be withdrawn at any time." (*Id.* at ¶ 2)

> "became aware of mounting evidence that the firm and its customers could no longer rely on the historical stability of the ARS market" but "nevertheless, continued to market ARS to its customers as highly liquid investments." (*Id.* at ¶ 3)

> "refused to buy back ARS from trusts that purchased and held ARS as trust property." (*Id.* at ¶ 8)

> "continued to carry ARS at full par value on trust statements and continued to charge trust management fees on the full par value." (*Id.* at ¶ 9)

> "failed to notify trust beneficiaries of the settlement and ARS buy back, failed to participate in the buy back in their role of trustee in charge of trust assets, and knowingly continued to charge fees based on inaccurate, non-existent securities

values." (*Id.* at ¶ 10)

"continued to market ARS as highly liquid securities through mid-February 2008 even though its employees knew or were reckless in not knowing that the risk of auction failures had materially increased." (*Id.* at ¶ 45)

"did not give its customers current, complete and accurate information about increasing risks of investing in ARS." (*Id.* at ¶ 47)

"downplayed the risk [of auction failure] by stating that ARS had high, above market, penalty rates if an auction failed to compensate the holder for the lack of liquidity and to create incentives for the issuer to provide liquidity by redeeming the ARS . . . [and] did not disclose that, at least under market conditions in late 2007 and early 2008, certain ARS had low, below market, penalty rates." (*Id.* at ¶ 68)

"never informed Mr. and Mrs. Wilson that the Wilson Trust held ARS." (*Id.* at ¶ 82)

"never informed Mr. and Mrs. Wilson that Wachovia entered into a settlement that included the buy back of all ARS by June 30, 2009, such as the ones held by the Wilson Trust." (*Id.* at ¶ 83)

"never informed Mr. and Mrs. Wilson that the ARS held by the Wilson Trust had lost all or most of their value." (*Id.* at ¶ 84)

"continued to represent to Mr. and Mrs. Wilson that the ARS held by the Wilson Trust retained their full value and liquidity." (*Id.* at ¶ 85)

"actively concealed the true value of the ARS held by the Wilson Trust." (*Id.* at ¶ 93)

In 1995, Congress enacted the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA") to curb perceived abuses of federal class action securities litigation. *See Rowinski*, 398 F.3d at 298; *Atkinson v. Morgan Asset Mgmt., Inc.*, 658 F.3d 549, 552 (6th Cir. 2011). However, to circumvent PSLRA, plaintiffs filed such actions in state courts, artfully pleading their claims as state law causes of action, such as claims for breach of fiduciary duty and breach of contract. To halt such efforts to litigate around PSLRA, Congress enacted SLUSA in 1998. Congress envisioned a broad interpretation of SLUSA to ensure the uniform application of federal

fraud standards. *Rowinski*, 398 F.3d at 299. The claims in issue illustrate that the overarching theme of the complaint is Defendants' misrepresentations and omissions regarding the liquidity and value of ARS and the risks associated with investing in ARS.

Similar to the facts set forth in *Dabit*, Plaintiffs' complaint alleges that Defendants' financial advisors relied on incomplete information provided to them by Defendants in encouraging customers to purchase ARS as a low-risk investment vehicle equivalent to cash. *See Dabit*, 547 U.S. at 75. In both cases, the misrepresentations allegedly caused Plaintiffs to continue to hold their securities beyond the point when they would have otherwise redeemed them if the truth had been known. *Id.*; *see also In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1215 (C.D. Cal. 2005) (concluding that SLUSA preempted the plaintiff's action where the defendant "willfully tailored and distorted its investment advice to steer Plaintiffs and the class members to the Preferred Funds, then encouraged them to hold those funds for the long term."). The allegations in Plaintiffs' complaint suggest that Plaintiffs[8] would have sold their shares earlier, participated in the buy back, or refrained from investing in ARS in the first place if they had been given complete and accurate information. In light of the Supreme Court's decision in *Dabit*, these allegations are sufficient to bring the complaint within the ambit of SLUSA preclusion.

Despite Plaintiffs' contentions that the allegations of misrepresentations and omissions in the complaint are intended merely to provide background, Plaintiffs incorporate these allegations into each count of the complaint as a factual predicate to the claims. The Third Circuit has held that this

---

[8] Although Plaintiffs in the instant matter did not themselves purchase ARS, the Supreme Court has extended SLUSA preclusion to holders of securities, holding that "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." *Dabit*, 547 U.S. at 89.

is sufficient to satisfy the misrepresentation prong under SLUSA. *See Rowinski*, 398 F.3d at 300 ("[P]reemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another."); *see also Prof'l Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (determining that allegations regarding misrepresentations and omissions were incorporated by reference in the negligence count).

Plaintiffs cite a line of cases from the Southern District of New York cautioning against attempts by defendants to recast a plaintiff's complaint as a securities lawsuit so as to have it preempted by SLUSA. *See, e.g., Grund v. Del. Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226 (S.D.N.Y. 2011). Notably, Plaintiffs do not analogize the facts of the cited cases to the facts set forth in the instant complaint, and the cases are distinguishable.

The court in *Grund* concluded that SLUSA did not preclude the plaintiff's complaint because misrepresentations were not made "in connection with" a securities transaction where the plaintiff's assets were deposited into a Ponzi scheme that outwardly purported to invest in covered securities. *Id.* at 243. The nature of the Ponzi scheme substantially influenced the court's analysis, and similar facts are not present in the instant matter.

In *Paru v. Mutual of Am. Life Ins. Co.*, the parties agreed that the complaint contained no explicit allegation of a misstatement or omission and, upon review, the court agreed with the parties' assessment. 2006 WL 1292828, at *3-4 (S.D.N.Y. May 11, 2006). In contrast, for the reasons previously stated, Plaintiffs' allegations in the present matter regarding Defendants' failure to buy back the ARS and abide by the settlement agreement are inextricably connected to the misrepresentations and omissions made regarding the risks associated with investing in ARS.

The court's decision in *Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.* was decided prior to the Supreme Court's decision in *Dabit*, and determined that only the language of the causes of action themselves must sound in fraud or contain allegations of misrepresentations or omissions. 341 F. Supp. 2d 258, 269 (S.D.N.Y. 2004) (making no finding with respect to the "in connection with" requirement after determining that the complaint alleges neither a "misrepresentation or omission of a material fact"). This determination is inconsistent with Third Circuit precedent cautioning against "artful pleading" and negating any distinction between legal and factual allegations in a complaint for purposes of determining whether SLUSA precludes the action. *See Rowinski*, 398 F.3d at 300.[9]

Plaintiffs also refer to *Pension Committee of Univ. of Montreal Pension Plan v. Bank of America Securities, LLC*, in which the district court based its decision on a determination that the funds at issue were not covered securities. 750 F. Supp. 2d 450, 453-54 (S.D.N.Y. 2010). The parties in the instant matter agree that ARS are "covered securities."

### B. Amendment of the Complaint

In the event that the court concludes the complaint is precluded by SLUSA, Plaintiffs contend that they should be permitted to proceed with the balance of the claims or to amend the complaint to remove any allegations of misrepresentations or omissions that are not required elements of the causes of action alleged in the complaint. (D.I. 10 at 5) In the alternative, Plaintiffs request leave

---

[9]The Third Circuit has further clarified that, "[t]o be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail . . . While it may be unwise . . . to set out extraneous allegations of misrepresentations in a complaint, the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA." *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008). The Third Circuit's decision in *LaSala* is distinguishable from the present matter, in which the facts are inextricably intertwined with the causes of action and are not merely extraneous details.

16

to amend for purposes of removing the class action allegations and proceeding individually in the event that the Court finds that none of the allegations may be brought as a class action, even with amendment. (*Id.* at 6) In response, Defendants contend that a plaintiff may not evade SLUSA's preemption by filing an amendment that omits express references to deceptive and manipulative conduct or disavows reliance on such allegations. (D.I. 12 at 7)

The *Rowinski* court suggests in dicta that separate examination of each count of the complaint to determine whether it is precluded by SLUSA is inconsistent with the statutory language. *See Rowinski*, 398 F.3d at 305. "The statute does not preempt particular 'claims' or 'counts,' but rather preempts 'actions,' 15 U.S.C. § 78bb(f)(1), suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed." *Id.* Ultimately, the Third Circuit determined that it was unnecessary to reach a definitive conclusion on the issue because the plaintiff had incorporated every paragraph of the complaint into each cause of action, compelling the conclusion that each count was preempted by SLUSA. *Id.*; *see also Atkinson*, 658 F.3d at 556 ("[B]ecause all of Plaintiffs' claims include allegations of fraud, SLUSA damns each one."). The same is true in the instant matter (D.I. 1, Ex. A at ¶¶ 102, 108, 114), and as such, Plaintiffs' complaint is precluded by SLUSA in its entirety.

Allowing Plaintiffs to amend the complaint to remove references to misrepresentations and omissions would defeat the purpose of the statute by inviting artful pleading.[10] Removing specific terms from the complaint in an attempt to circumvent SLUSA preclusion would not alter the

---

[10]The court further notes that, although Plaintiffs have requested leave to amend the complaint as an alternative argument in opposition to Defendants' motions to dismiss, Plaintiff has not filed a formal motion for leave to amend pursuant to Rule 15, and no proposed amended complaint is before the court.

"essence" of the claims in this case. *Rowinski*, 398 F.3d at 301. A plaintiff cannot avoid preclusion under SLUSA through " . . . artful pleading that removes the covered words . . . but leaves in the covered concepts." *Atkinson*, 658 F.3d at 555 (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310-11 (6th Cir. 2009)).

Plaintiffs cite no authority in support of their alternative request for leave to amend for purposes of removing the class action allegations and proceeding individually. Although SLUSA preclusion mandates dismissal, it does not foreclose Plaintiffs from bringing individual state law claims because "SLUSA does not pre-empt any cause of action. It simply denies the use of the class-action device to vindicate certain claims." *See Dabit*, 547 U.S. at 72, 87 (SLUSA preemption "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state law cause of action that may exist.").

Therefore, it is recommended that the complaint should be dismissed, without prejudice.[11]

### C.  Additional Grounds for Dismissal Based on Failure to State a Claim

In addition to SLUSA, Defendants raise other, independent grounds for dismissal of Plaintiffs' claims, namely, for failure to state a claim for breach of fiduciary duty or breach of contract. In response, Plaintiffs concede that they did not assert causes of action for breach of fiduciary duty against the Non-Trust Defendants in Counts I and II of the complaint, and they did not assert a cause of action for breach of contract against the Trust Defendant in Count III of the complaint. (D.I. 9 at 8-9; D.I. 10 at 7) I recommend that, to the extent the complaint does not state

---

[11]A dismissal without prejudice is consistent with the Third Circuit's decision in *Rowinski*, which stressed that SLUSA "does not preempt particular 'claims' or 'counts' but rather preempts 'actions,' suggesting that if any claims alleged in a covered class action are preempted, the entire action must be dismissed." *Rowinski*, 398 F.3d at 305 (internal citation omitted).

a cause of action for breach of fiduciary duty against the Non-Trust Defendants or a cause of action for breach of contract against the Trust Defendants, those claims should be dismissed. *See Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 879 (N.D. Ohio 2006) (plaintiff's failure to respond to defendant's arguments on a Rule 12(b)(6) motion to dismiss was a concession that the cause of action failed to state a claim upon which relief could be granted).

It is unnecessary for me to consider the additional bases for dismissal under Rule 12(b)(6) in light of my determination that SLUSA precludes the class action. I will defer ruling on these additional grounds for dismissal until after any objections to this Report and Recommendation are resolved.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant Defendants' motion to dismiss the complaint, without prejudice, as precluded by SLUSA.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order In Non Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: October 22, 2012

_____
UNITED STATES MAGISTRATE JUDGE